IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NANETTE L.,[1]

      Plaintiff,

  v.                                                                                Civ. No. 21-1096 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, she asserts the ALJ erred in rejecting two psychologists' mental health opinions that Plaintiff has functional limitations from PTSD and depression—opinions which were substantially consistent with one another and with a treating counselor's opinion. The Court agrees that the ALJ committed legal error in rejecting these mental health opinions. As a result, the Court GRANTS Plaintiff's Motion To Reverse And Remand, With Supporting Memorandum (Doc. 18) and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 11, 12. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

  A.  Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

  (1)  At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

  (2)  At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

  (3)  At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

  (4)  If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>      most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)  If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor

substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

On appeal, Plaintiff challenges the ALJ's evaluation of two mental health opinions, and one opinion regarding her physical functioning. Plaintiff also challenges the ALJ's evaluation of Plaintiff's evidence relating to her stress, fatigue, and other subjective symptom evidence. Because the Court agrees the ALJ erred in analyzing the two mental health opinions, it reverses and remands and declines to reach the remaining issues.

A.   Legal standard

The ALJ is required to evaluate every medical opinion she receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017, as is the case here,[4] a unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant).

First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good

---

[4] The application was filed on August 26, 2013. AR 11.

reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).[5]

The ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed this as a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

B.    Treating psychiatrist Debra Solomon, M.D.

Dr. Solomon was treating Plaintiff in 2014 and 2015, in the course of which she noted a diagnosis of PTSD and stated that Plaintiff has "environmental illness" and "sensitivities to everything." AR 453, 456, 461. In handwritten notes,[6] Dr. Solomon recorded PTSD from "ongoing trauma" and "exposure to toxins"; opined that she is unable to work because of her

---

[5] The factors in the regulation are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

[6] The Court found the handwritten notes mostly illegible, but both parties and the ALJ largely agree about what they say.

inability to find stable housing; and stated that she has difficulties coping with "severe environmental illness." AR 458, 480.

In April 2015, Dr. Solomon provided a medical source statement ("MSS"), assessing marked limitations in numerous work-related abilities. AR 471-73. A letter accompanied the MSS form, stating that Plaintiff has PTSD which is "exacerbated by her cycle of homelessness, unemployment, and serious health issues related to Environmental Illness/Multiple Chemical Sensitivity (severe chemical sensitivities), Lyme disease and other tick-borne co-infections, as well as a childhood history of familial trauma." AR 476. The letter opined that these conditions "likely are contributing to [Plaintiff's] PTSD, as well as the other cognitive, mental and physical health issues that she reports." *Id.* The letter relayed Plaintiff's statements that "her severe chemical reactions, joint pain and extreme fatigue cause her to spend 12-16 hours a day in bed on most days, and that focus and task completion are often a challenge due to joint pain, extreme fatigue, brain fog and difficulty in concentrating." AR 477. "Given the complexity and severity of [these] health issues," Dr. Solomon stated that she "expect[s] that [Plaintiff] will continue to experience significant challenges to finding and maintaining employment and housing, particularly since she has a history of housing instability and difficulty in finding employment that she can maintain due to her health." *Id.* Dr. Solomon concluded that Plaintiff "is fully able to work with a flexible schedule and full accommodations for her sensitivities, ideally working at home." AR 475.

After discussing the evidence in great detail, the ALJ evaluated Dr. Solomon's opinion as follows:

> With respect to the effect the claimant's sensitivities had on her ability to work, I give Dr. Solomon's opinion little weight as it appears to be mainly based on the claimant's subjective reports and in fact on the e-mail that the claimant provided Dr. Solomon providing details about the letter for disability (11F/11). Dr.

> Solomon observed that the claimant had adequate concentration and attention and was articulate. She also noted that the claimant did not require medications or therapy. Further, treatment notes indicate that the claimant's condition was improved. These facts are not consistent with her opinion that the claimant had moderate and marked limitations with respect to her ability to work. I give little weight to the claimant's need for a flexible schedule as this is not supported by the treatment notes, which illustrate that the claimant had minimal mental health symptoms during her treatment sessions. The treatment notes do not provide any objective evidence that the claimant would require a flexible schedule.

AR 519.

Plaintiff challenges the ALJ's decision to give little weight to Dr. Solomon's opinion on the basis that it is based on "subjective reports" and that the treatment notes provide no "objective" evidence. Doc. 18 at 8. Plaintiff cites published Tenth Circuit law that "a psychological opinion may rest either on observed signs and symptoms or on psychological tests; thus, [the psychologist]'s observations about claimant's limitations do constitute specific medical findings." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (per curiam); *see also Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005)[7] ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."). The Commissioner does not respond to Plaintiff's argument that the ALJ's stated reasons are legally invalid reasons to discount a medical opinion. *Cf.* Doc. 20 at 16 (acknowledging the ALJ's subjectivity reasoning in passing, and citing the regulatory factors of supportability and consistency as support for the ALJ's decision without analysis of *Robinson*).[8]

---

[7] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[8] The Commissioner argues generally that Plaintiff identified no legal error and raises arguments subject only to the substantial-evidence standard of review. Doc. 20 at 18 n.2. To the extent this argument pertains to the issues the Court discusses regarding the medical opinion evidence, the Court disagrees. Failing to apply correct legal standards in evaluating the treating physician's opinion is reversible legal error. *Robinson*, 366 F.3d at 1080. It is also error to "mischaracterize

8

The Court agrees with Plaintiff that the ALJ's speculation that the diagnosis was based on an email is unfounded. Dr. Solomon saw Plaintiff in person and documented observed signs and symptoms. *Cf.* AR 517 (describing the treatment and treatment notes). The reference to an email is in Dr. Solomon's handwritten notes stating that she will write a letter for disability and Plaintiff will email details. AR 463. There is no evidence that this email was, as the ALJ implies, a dictation of what the letter should say. It could simply have been explaining what the disability process entails or where Plaintiff wished to have the letter sent. The Tenth Circuit has held that "speculative lay opinion" is "an improper basis to reject the treating physician's opinion," *Robinson*, 366 F.3d at 1083, and "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence," *id.* at 1082 (internal quotation marks omitted). Making speculative lay inferences is exactly what the ALJ did here.

This does not necessarily mean, however, that the ALJ committed reversible error. The Court agrees with the Commissioner that the ALJ is permitted to consider, as one factor in evaluating the opinion of the treating physician, whether it is based on a claimant's subjective reports. As *Thomas* put it, "[t]he ALJ cannot reject [a psychologist]'s opinion *solely* for the reason that it was based on [the plaintiff]'s responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the doctor]." 147 F. App'x at 760 (emphasis added). Based on this language, this Court has previously concluded that, "*as one factor* in limiting the weight of [a psychologist']s opinion, the ALJ appropriately considered that his opinion was

---

or downplay evidence to support [the ALJ's] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

based on subjective statements from Plaintiff that the ALJ found to not be credible." *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (2016) (emphasis in original).

In other words, it is not reversible error for the ALJ to note, in analyzing a medical opinion, that it is based on subjective statements as long as the ALJ gave good reasons to discount the subjective statements, or other legitimate reasons to discount the doctor's opinion. Here, the ALJ gave other reasons for assigning "little weight" to the opinion (i.e., according to the ALJ, some of Dr. Solomon's observations in her opinion are not consistent with her conclusions, and the treatment notes show minimal mental health symptoms during treatment sessions). Neither party addresses whether the ALJ's other reasons are legitimate and supported by substantial evidence. Ultimately, the Court notes the problems with the ALJ's evaluation of Dr. Solomon's opinion but does not determine whether they constitute reversible error on their own, because the Court reverses on other grounds.

    C.    <u>Examining psychologist Robert Krueger, Ph.D.</u>

Dr. Krueger performed a consultative evaluation in December 2013. AR 300. Plaintiff reported symptoms of environmental illness, chronic breathing problems, chronic pain and fatigue, tendonitis, anxiety, disturbing memories, hypervigilance, panic when confronted with pesticides, concentration and memory difficulties, hopelessness, and depression. AR 300-01. Plaintiff reported that she did not have health insurance, that she used to participate in therapy but currently did not have a therapist, and that she refused to take psychoactive medications such as antidepressants. AR 301-02.

Dr. Krueger administered the Beck Depression Inventory and the Digit Span test, and performed a mental status examination. AR 302. Plaintiff was "somewhat guarded in her manner of relating." AR 302. "During the interview she at times tended to get sidetracked and went into a great deal of detail, and this was an exceptionally long interview which lasted for about one

and one-half hours." *Id.* There was no evidence of psychosis, her speech was clear and rational, there was no evidence of a cognitive disorder, and she was functioning within the average range of immediate memory recall skills. *Id.* "Overall, the results of the current clinical interview and mental status exam indicate that [Plaintiff] is likely to have significant depression now, and she also reports having anxiety-related symptoms that are consistent with PTSD." *Id.* Dr. Krueger diagnosed depressive disorder, with a provisional diagnosis of PTSD, and assigned a GAF of 50. AR 303.

> Dr. Krueger concluded:
>
> The results of the current evaluation indicate that [Plaintiff] has multiple impairments, and she does have significant functional impairment. She appears to have the capacity to understand, remember, and follow simple work instructions with minimal impairment and complex or detailed instructions with moderate impairment. Because of chronic fatigue and chronic pain along with other medical issues, [Plaintiff] is likely to have marked impairment with maintaining pace and persistence in work environments. She stated that at times she sleeps 12-16 hours per day. In her current condition she can be expected to have marked impairment with adjusting to changes in work environment. Because of ongoing emotional difficulties [Plaintiff] is likely to have moderate impairment in some relationships with coworkers, supervisors, and the general public. In her current condition she can be expected to have at least moderate impairment with traveling to distant places alone. Alcohol or drug use is not a factor in this case. Because of ongoing medical issues, along with chronic emotional difficulties, [Plaintiff] can be expected to have moderate impairment with being aware of and reacting appropriately to dangers in work environments.

*Id.*

The ALJ analyzed this opinion by breaking it down into different limitations which the ALJ assigned different weights. With respect to the minimal impairment in simple work instructions, the moderate impairment in complex or detailed instructions, and the marked impairment in maintaining pace and persistence, the ALJ gave the opinion "little weight." AR 516. "[I]t seems to be based on the claimant's subjective reports that she slept 12 to 16 hours per day at times and is inconsistent with her ability to participate for 90 minutes in her interview."

*Id.* With respect to the marked impairment adjusting to changes in the work environment, the ALJ stated: "This opinion seems to be based on her m[ultiple] c[hemical] s[ensitivities], therefore, I give it little weight as it is not related to the claimant's mental health symptoms." *Id.* The ALJ mentioned the moderate limitation in interacting with others and traveling to distant places alone, but it is unclear what weight the ALJ assigned those portions of the opinion. AR 516-17. The ALJ gave "the remainder of the opinion great weight as it is consistent with [Dr. Kruger's] interview and testing of the claimant." AR 517.

Plaintiff challenges the ALJ's rejection of the limitation in persistence and pace on the grounds that it was speculation. Doc. 18 at 11. As laid out above, the Tenth Circuit has prohibited lay speculation as a basis to reject a medical opinion. The Commissioner again does not address this argument or the Tenth Circuit precedent Plaintiff cites. *Cf.* Doc. 20 at 16-17. The Court agrees with Plaintiff that the ALJ rejected this portion of Dr. Krueger's opinion for illogical and speculative reasons.

As discussed above, the ALJ's discussion of the subjective nature of the statements underlying the opinion is not necessarily reversible error on its own. In this instance, however, there are no other good reasons given for rejecting these limitations. The ALJ's statement that these limitations are "inconsistent with [Plaintiff's] ability to participate for 90 minutes in her interview" is erroneous. AR 516. It is not only lay speculation, it is in fact directly contrary to what Dr. Krueger actually said: that Plaintiff was distractible (easily sidetracked), and that this rendered the interview "exceptionally" long. In other words, Dr. Kreuger found that Plaintiff's participation in the interview was *not* appropriate. This is the opposite of substantial evidence that Plaintiff can attend and concentrate appropriately for two-hour periods during an eight-hour workday.

In addition, as Plaintiff puts it, "Dr. Krueger knew how long the interview lasted." Doc. 18 at 11. "Dr. Krueger rendered a professional medical opinion; the ALJ cannot substitute her judgment regarding [Plaintiff]'s degree of limitation in persistence and based upon her own assessment of the medical significance of the length of testing by Dr. Krueger." *Id.*; *see Sisco v. HHS*, 10 F. 3d 739, 744 (10th Cir. 1993) (the ALJ cannot reject a doctor's opinion that relied on symptom evidence on the basis that there was no "dipstick" laboratory test confirming a diagnosis, when relying on symptoms is a commonly accepted medical technique for the condition).

Plaintiff also challenges the ALJ's rejection of the marked impairment in adjusting to changes in the work environment, on the basis that "[t]his opinion seems to be based on [the claimant's] m[ultiple] c[hemical] s[ensitivities]" and therefore "not related to the claimant's mental health symptoms." AR 516. Plaintiff argues, "[t]he ALJ is again guessing at the meaning of Dr. Krueger's finding." Doc. 18 at 11. The Court agrees. Dr. Krueger did not say the impairment in adjusting to changes was based on chemical sensitivities or that it was unrelated to mental health symptoms. He said it was based on "her current condition." AR 303. In other words, there is no basis to conclude this limitation was unrelated to the current mental health conditions discussed in the opinion—including depression and PTSD. The ALJ therefore mischaracterized the opinion and in so doing, erred. *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing what the physician said). Because this is the only reason the ALJ gave for rejecting this limitation, it is clear that this is reversible error at least with respect to the marked impairment in adjusting to changes in the work environment.

D.     Consistency of mental health opinions

Plaintiff further argues that the ALJ should have considered the consistencies among the mental health opinions in the record from Dr. Solomon, Dr. Kreuger, and Plaintiff's treating mental health counselor, Suzanne Lovelace, LPCC. Doc. 18 at 10.

The Court finds that the ALJ clearly did consider that these opinions were consistent. The ALJ describes in her opinion that Ms. Lovelace was treating the claimant for PTSD on a weekly basis since June 2014 through at least March 2015. AR 519. Ms. Lovelace noted that the claimant's loss of housing due to health issues has been a trigger for her PTSD and has been unable to reside in most houses due to their toxicities. *Id.* Ms. Lovelace noted that the claimant continued to have symptoms of PTSD and was making very slow progress. *Id.* She diagnosed the claimant with PTSD and generalized anxiety disorder and assigned a GAF of 56. *Id.* She noted that the claimant's PTSD, Environmental Illness, and Lyme disease were long term debilitating illnesses and would require psychotherapy for months or years. AR 519-20. In May 2016, Ms. Lovelace noted that the claimant continued weekly therapy when she was able to leave her rental house and was focusing on resolving her PTSD symptoms. AR 520.

The ALJ's lengthy discussion of the mental health opinions from Ms. Lovelace, Dr. Solomon, and Dr. Krueger indicates that the ALJ at least *considered* that they were consistent with one another. The Court therefore rejects Plaintiff's argument that the ALJ failed to consider this factor. However, Plaintiff's argument implicates a different problematic aspect of the ALJ's discussion. Every mental health opinion the ALJ discussed assigned Plaintiff significant functional impairments related to her mental health conditions. AR 516-21.[9] This leaves the

---

[9] Only the state agency non-examining psychological consultants opined that Plaintiff can perform simple work without any significant limitations. AR 82, 97. But the ALJ did not rely on

14

Court wondering what, exactly, constitutes the substantial evidence for rejecting the severe functional limitations in every mental health opinion the ALJ considered. *Cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."); *Robinson*, 366 F.3d at 1082 (an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence").

The Court therefore remands for a reconsideration of the mental health opinions following the proper legal standards. The Court declines to reach Plaintiff's remaining allegations of error, as they may be affected by the analysis on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion To Reverse And Remand, With Supporting Memorandum (Doc. 18) is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

---

these state agency consultant opinions as substantial evidence for her decision—the ALJ did not even discuss these opinions at step four.